**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **STEVEN THOMASON,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO. 2:12-cv-604-MHT-TFM** |
| ) | **[wo]** |
| **ONE WEST BANK, FSB, et. al.,** ) | |
| ) | |
|     **Defendants.** ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     Introduction**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law.  (Docs. 4, 78).   Pending before the Court is:

(1) Defendant Eva Banks's Motion for Summary Judgment (Doc. 175, filed 10/05/2017)

(2) Defendants', One West Bank, FSB ("OWB")[1], Ocwen Loan Servicing, LLC ("Ocwen", Deutsche Bank National Trust Company as trustee for Home Equity Mortgage Loan Asset-Backed Trust Series INABS 2006-A, Home Equity Mortgage

---

[1] OWB is improperly identified by Plaintiff in the Amended Complaint as "One West Bank, FSB, Indy Mac Bank".  OWB states for purposes of its Motion for Summary Judgment that it has treated Plaintiff's allegations against "IndyMac Mortgage Services" as directed at OWB, since Indy Mac Mortgage was a division of OWB. However, Indy Mac Mortgage Services, is a separate legal entity from the now-defunct Indy Mac Bank, FSB, which has not been served with process in this action. (Doc 183 at p.1, fn.1). Indeed, the FDIC advised Plaintiff by letter of November 1, 2012, that "[a]lthough not properly served" the FDIC had been appointed receiver for Indy Mac Bank, FSB which "no longer exists as a legal entity".   (Doc. 197-34).

1

  Loan Asset-Backed Certificates Series INABS 2006-A ("Deutsche Bank")[2] and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively referred to as "Defendants") Motion for Summary Judgment (Doc. 182, filed 10/16/2017) and Brief in Support (Doc. 183, filed 10/16/17);

(3) Plaintiff's Motion for Summary Judgment with Attachments (Doc. 186, Exs. 1-57 filed 10/16/2017) and Brief in Support (Doc. 196, filed 11/28/2017) and Amended Appendix of Attachments. (Doc. 197, Exs. 1-75).

## II. FACTUAL BACKGROUND

On October 19, 2005, Ms. Thomason, Plaintiff's wife, sought assistance in applying for a mortgage loan with Lucious Trimble and his brokerage, Chase Mortgage Company[3] to purchase a home at 901 Seibles Road in Montgomery, Alabama. (Doc. 175, Eva Bank MSJ, Thomason Depo., Ex. 1 at pp. 129-130; Ex. 4 at pp.1-5 and 8-9). Previously in 2005, Wachovia Bank foreclosed on a loan taken out solely in Plaintiff's name on property located at Alamont Drive in Montgomery, Alabama. (Doc. 175, Eva Bank MSJ, Ex. 5A). Because of the foreclosure's negative effect on Plaintiff's credit, he could not qualify to obtain another mortgage loan at that time. (Doc. 175, Eva Bank MSJ, Ex. 1 Thomason Depo. at pp. 70-71, 81-83; Ex 2. Affidavit of Thomas Russell).

---

[2] Deutsche Bank is improperly identified in the Amended Complaint as "Deutsche Bank National Trust Company."

[3] EvaBank maintains that neither Trimble nor Chase acted on behalf of EvaBank and that EvaBank exercised no control or direction over him or his brokerage. (Eva Bank MSJ, Doc. 175, Ex. 2 Affidavit of Thomas Russell.)

2

Thereafter, on November 28, 2005, Ms. Thomason individually borrowed $78,375.00 from EvaBank ("the Loan") pursuant to two promissory notes. (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2-A).  Plaintiff did not sign the notes, did not borrow any money from EvaBank, undertook no obligation to repay the same, and was not a borrower under the terms of the notes.  *Id*.  To secure the Loan, Ms. Thomason and Plaintiff signed two mortgages to MERS, as nominee for EvaBank and its successors and assigns.   (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2-B).  Plaintiff signed the mortgages solely as an accommodation mortgagor, as the Seibles Road Property was to be his and Ms. Thomason's residence.   *Id*.   Both mortgages specifically state as follows:

> "any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of Security Instrument or the Note without the co-signer's consent"

*Id*. at ¶13 (first mortgage), ¶11 (second mortgage).  In November 2005, Eva Bank sold the Plaintiff's mortgage to Indy Mac Bank.  (Doc. 89 at ¶18).

The Loan subsequently fell into various degrees of default. (Doc. 183, Defendants' Brief in support of MSJ; Affidavit of Katherine Ortwerth, Ex. 2 at ¶13).   Over the following years, Ms. Thomason was provided with two separate loan modification offers.   Ms. Thomason never applied for a loan modification with Eva Bank; rather she applied to Indy Mac Bank in 2007, but was denied.   (Amended Complaint, Doc. 89 at ¶¶ 22-23).   Later in July 2008, Ms. Thomason was offered a loan modification, and a second loan modification was offered in June 2009. (Doc. 183,

3

Defendants' Brief in support of MSJ, Ex. 2-D). Ms. Thomason accepted the 2008 modification offer and returned the necessary paperwork to implement the same. *Id.* The signed documents necessary to accept the subsequent 2009 modification offer were never returned. (Doc. 183, Defendants' Brief in support of MSJ; Affidavit of Katherine Ortwerth, Ex. 2 at ¶13). Ms. Thomason passed away in October 2009. Payments continued on the Loan for a year after Ms. Thomason's death but eventually ceased. The last payment on the Loan was made on November 4, 2010 and was applied to the payments due on August 1 and September 1, 2010. (Doc. 183, Defendants' Brief in support of MSJ, Affidavit of Katherine Ortwerth, Ex. 2 at ¶ 14; Ex. 2-C).

The record includes a March 24, 2010 copy of a letter from Plaintiff addressed to Indy Mac Mortgage Services wherein Plaintiff advised of his wife's death. However, there is no confirmation in the record of its mailing by Plaintiff or of its receipt by IndyMac Mortgage Services. (Doc. 186-16, Plaintiff's Motion for Summary Judgment). The record also includes a November 30, 2011 copy of a letter wherein Plaintiff advised he had faxed a copy of his wife's death certificate and responded that he did not need to respond to the request for executor of estate because he was a borrower on the original loan. Again, however, there is no confirmation in the record of its mailing by Plaintiff or of its receipt by any Defendant. Moreover, the letter contains no indication of the addressee. (Doc. 197-29, Plaintiff's Motion for Summary Judgment).

Plaintiff claims that these and other letters are qualified written requests ("QWRs") under the Real Estate Setttlement Procedures Act ("RESPA"). (Amended Complaint, Doc. 89 at ¶¶ 53, 56, 76, 77, 100). Specifically, Plaintiff claims to have sent QWRs dated November 30, 2011,

4

March 24, 2012,[4] May 10, 2012, and June 4, 2012 to IndyMac Mortgage, and QWRs dated January 28, 2015 and February 4, 2015 to Ocwen. (*Id.*; Doc. 196 at pp. 13-20, Plaintiff's Motion for Summary Judgment). Plaintiff admits that none of the alleged QWRs were sent to MERS or Deutsche Bank. (Defendants' Brief in support of MSJ, Doc. 183; Ex. 1 Thomason Depo. at pp. 331, 336, 352).

On November 1, 2013, servicing of the Loan transferred to Ocwen. (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2-E). On April 14, 2015, Ocwen sent Plaintiff a family transfer package for the Loan. (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2-J). Plaintiff never returned the Family Transfer Package needed to transfer the Loan into his name. (Doc. 183, Defendants' Brief in support of MSJ; Affidavit of Katherine Ortwerth, Ex. 2 at ¶25; Ex. 1 Thomason Depo. at 390, 392). However, Plaintiff was aware that he needed to complete the Family Transfer Package in order to receive a loan modification, but testified that he did not return the package because he did not trust the companies. (Doc. 183, Defendants' Brief in support of MSJ; Ex. 1 Thomason Depo. at 390, 392).

When questioned about the reasons stated by IndyMac Mortgage and Ocwen for not giving him a loan modification, Plaintiff testified that "[t]he reason that we've cleared today on the record was that I wasn't on the note . . . It had nothing to do with my income . . . But they've already said that I didn't qualify because I wasn't on the loan." (Doc. 183, Defendants' Brief in support of MSJ; Ex. 1 Thomason Depo. at 534). In fact, Plaintiff acknowledged as early as May 2012 that he was

---

[4] The Court has carefully reviewed the record and fails to find any correspondence from Plaintiff dated March 24, 2012. Thus, the Court understands that Plaintiff has mistakenly referenced the correspondence dated March 24, 2010.

5

advised by letter he could not obtain a loan modification because he was not a borrower on the Loan. (Doc. 186-19, Plaintiff's Motion for Summary Judgment; Doc. 183, Defendants' Brief in support of MSJ; Ex. 1 Thomason Depo. at 301-302). Plaintiff also admits in his pleadings that he "was told by Indy Mac that he was not approved for the loan modification because he was not named on the note on the first mortgage." (Amended Complaint, Doc. 89 at ¶ 48). Because Plaintiff never became a borrower under the Notes, he has not been approved for or offered a loan modification or other loss mitigation assistance. (Doc. 183; Defendants' Brief in support of MSJ; Affidavit of Katherine Ortwerth, Ex. 2 at ¶26).

### III. Procedural History

On July 11, 2012, Plaintiff filed a Complaint with this Court alleging various claims arising from Defendant OWB's handling of his "application for a loan modification". (Doc. 1). OWB filed a Motion to Dismiss the Complaint. (Doc. 6). A Report and Recommendation was entered wherein it recommended granting the Motion to Dismiss and dismissing the Complaint with prejudice. (Doc. 15). Thereafter, Plaintiff filed a Motion to Amend the Complaint to add additional claims and parties. (Doc. 17). A Supplemental Report and Recommendation was entered which recommended denying Plaintiff's Motion to Amend the Complaint. (Doc. 27). By Opinion and Judgment, the Court adopted both the initial Recommendation and the Supplement Recommendation, dismissing Plaintiff's Complaint with prejudice and denying Plaintiff's Motion to Amend. (Docs. 30, 31).

Plaintiff appealed the dismissal to the Eleventh Circuit. (Doc. 32). On December 16, 2014, the Eleventh Circuit entered its opinion affirming the dismissal of Plaintiff's Complaint, but

reversing the denial of Plaintiff's motion to amend and remanding "with instructions to the district court to allow Mr. Thomason to amend his RESPA claim and to address the proposed new claims and defendants."  (Doc. 42 at p. 12).   On remand, the Court entered an order requiring Plaintiff to file an amended complaint setting out the factual allegations that supported his claims and adding any new defendants.  (Doc. 44).  In his Amended Complaint, Plaintiff added MERS, Ocwen, Deutsche Bank, and EvaBank as parties and stated various causes of action.  (Doc. 49). On April 3, 2015, OWB, Ocwen, Deutsche Bank and MERS filed a Motion to Dismiss the Amended Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc 56).  On April 17, 2015, Eva Bank also filed a Motion to Dismiss the amended complaint or to require a more definite statement.  (Doc. 66).  Thereafter, the Court entered an Order denying Defendant's Motions to Dismiss with leave to renew but requiring Plaintiff to amend his Complaint once again to set forth a more definite, comprehensible statement of the case.  (Doc. 78).

      The Court also referred Plaintiff to the Pro Se Assistance Program[5]  for aid in drafting an amended complaint that complied with the Court's orders and the Federal Rules of Civil Procedure.  (Docs. 76 and 79).  On June 10, 2016, Plaintiff filed his most recent Amended Complaint.  (Doc. 89).  The Amended Complaint was essentially a restatement of the factual allegations contained in the previous filings regarding unlawful discrimination, civil rights violations, conspiracy and bank fraud.  Plaintiff incorporated these allegations into another claim

---

[5] PSAP provides assistance to unrepresented plaintiffs from volunteer attorneys in preparing an amended complaint.  The volunteer attorney does not ultimately represent the plaintiff, but will assist the plaintiff in drafting an amended complaint.

7

for civil rights violations and discrimination, as well as claims for violation of the ECOA, RESPA, FHA, FDCPA ADTPA, and RICO. Thereafter, Defendants OWB, Ocwen, Deutsche Bank and MERS filed another Motion to Dismiss (Doc. 93) and Defendant Eva Bank also filed another Motion to Dismiss.  (Doc. 94).

By Opinion and Judgment entered on March 22, 2017, the District Judge adopted the March 1, 2017 Recommendation, with exception. (Docs. 108, 112 and 113).  The Court's Opinion and Judgment on Defendants' Motion to Dismiss dismissed Plaintiff's claims under the ECOA, FDCPA, RICO, and ADTPA.  *Id.*  The Court also dismissed Plaintiff's FHA claim with respect to allegations concerning loan origination and with respect to modification proceedings occurring before March 3, 2013.  *Id.*  Accordingly, the Court ruled that the claims surviving the Motions to Dismiss were as follows:

1) Claims for violations of the Real Estate Settlement Procedures Act. 12 U.S.C §2601 ("RESPA");

2) Claims for racial discrimination brought pursuant to 42 U.S.C. §§ 1981 and 1982;

3) Claims brought pursuant to the Fair Housing Act, 42 U.S.C. §3605, ("FHA') with respect to any loan modification proceedings occurring after March 3, 2013.

(Doc. 113 at pp. 2-3).

On April 14, 2017, the Court issued an Order requiring the parties to file a discovery plan pursuant to the Federal Rules of Civil Procedure, Rule 26(f).  (Doc. 114).  Thereafter, in accordance with the Court's Order, the Defendants submitted a Rule 26 (f) Report which they stated "was provided to the Plaintiff and he was asked for his views and proposals, but he did not

respond." (Doc. 115). On May 5, 2017, the Court entered an Order requiring that discovery "*shall be completed* on or before September 5, 2017" and that dispositive motions be filed on or before October 16, 2017. (Doc. 116). (Emphasis added). On June 2, 2017, Plaintiff served his first set of requests for admission to the Defendants. (Doc. 129). This was the only discovery taken by Plaintiff; he did not timely or properly issue any additional written discovery, nor did he take any depositions or issue any third-party subpoenas. Indeed, on September 21, 2017, the Court denied Plaintiff's Motion for Discovery filed on September 5, 2017 (Doc. 152) on the basis that is was filed outside the time for completion of discovery. (Doc. 168).[6]

## VI. Standard of review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmt'y Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995). The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial.

---

[6] The Guidelines to Civil Discovery Practice in the Middle District of Alabama I. (H) state "[t] Court applies the discovery cutoff to mean that discovery must be completed by that date."

*Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir. 1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."

## V. Discussion and Analysis

### A. The RESPA Claim (Count 3)

Plaintiff has filed an amended RESPA claim wherein he alleges that "Defendants, OneWest Bank, FSB Indy Mac Bank [and] Ocwen Loan Servicing"[7] "violated" his multiple qualified

---

[7] Plaintiff does not bring a RESPA claim against Eva Bank. (Doc. 89 at ¶ 100; Doc. 108 at p. 15 fn. 5)  Indeed, the Court notes that Defendant Eva Bank was not the servicer of the loan; and therefore, Plaintiff has no RESPA claim against Eva Bank.12 U.S.C. §2605(e)(1)(B) and (f).

10

written requests dated November 30, 2011, March 24, 2012, May 10, 2012, and June 4, 2012, to Indy Mac Mortgage and qualified written requests dated January 28, 2015 and February 4, 2015 to Ocwen[8] because they "denied Plaintiff's ownership of property" which lead to "discriminating against borrowers on a prohibited basis in approving or denying loan modifications." (Doc. 89 ¶¶ 53, 56, 76, 77, 100).   Under RESPA, a "qualified written request" is defined as the following:

> A "qualified written request" is defined as a "written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

(Doc. 42 p. 9 citing 12 U.S.C. § 2605(e)(1)(B)).   Furthermore, a servicer is obligated to respond to a written request from a borrower within sixty days of receipt of the qualified written request. *Id*. citing 12 U.S.C. § 2605(e) (2).   If a servicer fails to comply with its obligations under RESPA or its regulations, plaintiff can recover "any actual damages to the borrower as a result of the failure."   12 U.S.C. §1605(f)(1)(A).   Thus, under RESPA "[w]hoever fails to comply . . . shall be liable *to the borrower* for each such failure."   12 U.S.C. §1605(f).   Moreover, in order for Plaintiff to succeed on a claim for a RESPA violation, Plaintiff must produce sufficient evidence of actual damages caused by the servicer's failure to comply with RESPA in responding to the request for information relating to her mortgage loan.   *See Baez v. Specialized Loan Servicing,* 2017 WL 4220292 *1 (11th Cir. 2017) (Granting summary judgment in favor of servicer on RESPA claim because Plaintiff, borrower, had not demonstrated "actual damages.")

---

[8] For purposes of this analysis, the Court assumes without deciding that Plaintiff's letters to Defendants satisfied the "qualified written request" requirements.

Plaintiff alleges that Defendants failed to respond to his written requests which resulted in his inability to get a loan modification for his home following the death of his wife. In order to have standing to bring a claim under RESPA, Plaintiff must have an obligation under the note. *Johnson v. Ocwen Loan Servicing*, 374 F. App'x. 868, 874 (11th Cir. 2010) (Plaintiff did not have standing under RESPA because he "was not a borrower or otherwise obligated on the Ocwen loan and, therefore, did not suffer an injury-in-fact."); *Shedd v. Wells Fargo Home Mortg. Inc.,* 2015 WL 6479537 at *3-4. (S.D. Ala. 2015) (Plaintiff did not have standing under RESPA "because he did not sign, and therefore was not obligated to repay, the promissory note.") The evidence before the Court is undisputed that only Ms. Thomason, and not Plaintiff, signed the promissory notes in this case. (Doc. 183; Defendants' Brief in support of MSJ, Ex. 2-A). Thus, on this basis alone the Court could conclude that Plaintiff lacks standing to bring a RESPA claim. However, the Court will assume without deciding for the sake of providing a thorough analysis that Plaintiff might be considered a borrower on the promissory notes and on that basis will consider whether the Plaintiff has standing to bring this RESPA claim.

To establish standing a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Yeager v. Ocwen Loan Servicing, LLC,* 237 F. Supp. 3d 1211, 1215 (M.D. Ala. 2017) (quoting *Spokeo, Inc. v. Robins,* __U.S.__, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "To establish injury in fact, a plaintiff is required to show that he or she 'suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Id.* at 1215-16. "To be concrete, the injury must be 'real', and

12

not 'abstract.'" *Id*. at 1216. While the injury need not be tangible, Plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo,* 136 S. Ct. at 1550. Moreover, under RESPA, it is well-settled that Plaintiff must establish "a causal link between the claimed damages and defendant's alleged RESPA violation." *Tallent v. BAC Home Loans,* 2013 WL 2249107 *2-5 (N.D. Ala. 2013) (Plaintiffs' allegations that Defendant instituted foreclosure proceedings on home insufficient to establish actual damages).

Plaintiff alleges that the Defendants failed to respond or failed to respond sufficiently to his QWR's and as a result he was denied a modification on a loan to which he was not a party. However, there is no evidence before the Court that this alleged failure caused Plaintiff any harm. Indeed, Plaintiff testified that Defendant's failure caused him "stress" and "almost cost . . . [him his] home because by not responding they moved ahead with foreclosure." (Doc. 183, Defendants' Brief in support of MSJ, Ex. 1, Thomason Depo. at 421). These alleged damages, however, do not satisfy the concrete injury requirement under *Spokeo* or the actual injury requirement under RESPA. Furthermore, these allegations in no way demonstrate that the Defendant's alleged deficient response "prevented . . . [Plaintiff] from taking some important action." *Bates v. JPMorgan Chase Bank, NA.,* 768 F. 3d 1126 (11th Cir. 2014) (Summary judgment granted in favor of Defendant bank on RESPA claim because Plaintiff failed to demonstrate harm). Thus, the Court concludes that Plaintiff has failed to present sufficient evidence to create a question of fact as to his allegations of damages. Accordingly, the Court concludes that Defendants' Motion for Summary judgment is due to be granted on Plaintiff's RESPA claim.

### B.    The 42 U.S.C. §§ 1981, 1982 Claims (Count 2)

Plaintiff also brings claims for civil rights violations pursuant to 42 U.S.C. §§ 1981 and 1982. Specifically, Plaintiff claims that he was denied a loan modification based on his race. (Doc. 89 pp. 23-24).   Section 1981 states

> "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

42 U.S.C. § 1981(a).   Section 1982 then states that

> "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

42 U.S.C. § 1982 (2012).

Under Sections 1981 and 1982, a "plaintiff must prove intentional discrimination by the defendants." *Latimore v. Citibank, F.S.B.,* 979 F. Supp. 662, 664 (N.D. Ill 1997)[9]; *see also Boyd v. Walgreen Co.*, 2006 WL 2239192 at *3 (M.D. Ala. Aug 4, 2006) citing *Brown v. Am. Honda Motor Co.,* 393 F.2d 946, 949 (11th Cir.1991) and *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1338, 1235 (11th Cir. 2000).   "Adopting the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the courts have articulated the same prima facie requirements for [both Sections 1981 and 1982.]" *Latimore*, 979 F. Supp. at 664-65.

---

9 The Court recognizes that a district court case from another district is only persuasive authority.   However, the Court cites *Latimore* because the facts of that case – alleged discrimination in the loan application process – are almost identical to the facts of the instant action.

14

> Thus, in a case where the plaintiff alleges that her loan application was discriminatorily denied, she must prove (1) that she is a member of a protected class, (2) that she applied for and was qualified for a loan, (3) that the loan was rejected despite her qualifications, and (4) that the defendants continued to approve loans for applicants with qualifications similar to those of the plaintiff.

*Id.* at 665 citing *Bell v. Mike Ford Realty Co.,* 857 F. Supp. 1550, 1556 (S.D. Ala. 1994); *see also Terry Properties, Inc., v. Standard Oil Co.,* 799 F.2d 1523, 1534 (11th Cir. 1986).

The Court does not understand Plaintiff to bring a claim for discrimination based on the origination of this loan. However, any claim for discrimination based on the origination of the loan would fail because Plaintiff has presented no evidence that he was denied based on his race. Indeed, the undisputed evidence before the Court indicates that in 2005, prior to the transaction which is the subject of this action, Wachovia Bank foreclosed on a loan taken out solely in Plaintiff's name on property located at Alamont Drive in Montgomery, Alabama. (Doc. 175, Eva Bank MSJ; Ex. 5A). Because of the foreclosure's negative effect on Plaintiff's credit, he could not qualify to obtain another mortgage loan at that time. (Doc. 175, Eva Bank MSJ, Ex. 1 Thomason Depo. at pp. 70-71, 81-83; Doc. 175-1, Ex. Affidavit of Thomas Russell, Ex. 2). Thus, on November 28, 2005, Ms. Thomason individually borrowed $78,375.00 from EvaBank ("the Loan") pursuant to two promissory notes. (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2-A). Therefore, the Court concludes that Plaintiff fails to make a prima facie case of discrimination based on the origination of the loan.

With respect to Plaintiff's claim that he was discriminated against because he was denied a loan modification following his wife's death, the undisputed evidence before the Court demonstrates that Plaintiff did not execute the Notes and did not borrow any money from EvaBank.

15

Rather, Plaintiff's wife is the sole borrower on the loan. (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2-A). The undisputed evidence before the Court also demonstrates that the reason Plaintiff was not approved for or offered a loan modification was because he did not sign the Notes and thus, had not assumed any responsibility for the loan. (Doc. 183, Defendants' Brief in support of MSJ, Ex. 2, Ortwerth Aff., ¶¶24-27. Indeed, Plaintiff testified in deposition that he was not given a loan modification because "[t]he reason that we've cleared today on the record was that I wasn't on the note . . . It had nothing to do with my income . . . But they've already said that I didn't qualify because I wasn't on the loans." (Doc. 175, Eva Bank MSJ, Ex. 1 Thomason Depo. at pp. 534:11-17.) Later Plaintiff again testified, "Ocwen told me I wasn't on the note as to why they were not modifying [the Loan]." *Id.* at. p. 537:14-15. Thus, the Court concludes Plaintiff fails to create a prima facie case of discrimination with respect to the loan modification because Plaintiff fails to demonstrate that he was qualified for the loan.

Plaintiff fails to meet his prima facie burden to establish discrimination for another reason as well. Indeed, Plaintiff has produced no evidence that other similarly situated applicants – that is non-minority applicants who are surviving non-borrowing spouses – were approved for loan modifications. Plaintiff testified in deposition that his evidence of intentional discrimination was outlined in his Amended Complaint (Doc. 175, Eva Bank MSJ, Ex. 1 Thomason Depo. at pp. 413:11-16.). However, the Amended Complaint, while not evidence, fails to contain even simple allegations of similarly situated applicants receiving loan modifications. (Doc. 89). Indeed, Plaintiff testified that he did not have any evidence to support his discrimination claims but would find some during discovery. Specifically, Plaintiff testified as follows:

16

> Q. And as we sit here today, you can't direct me to any examples of husbands who are not African-American, so who are Caucasian husbands, whose wives died and they were given loan modifications? You don't have any of those as we sit here today?
>
> A. As we sit here today, no, but I am informing you that your discovery package has about a hundred questions related to that very issue where I am requesting those documents.

(Doc. 175, Eva Bank MSJ, Ex. 1 Thomason Depo. at pp. 460:11-20.) Pursuant to this Court's Order of May 5, 2017 discovery closed in this matter on September 5, 2017. (Doc. 116). Plaintiff filed a Notice with this Court of filing Discovery on September 5, 2017. (Doc. 151) Also on September 5, 2017, Plaintiff also filed a cursory Motion for Discovery. In that Motion, Plaintiff sought "information as to employees . . . that handled the modification request for OneWest and Indy Mac Bank . . .therefore request is made that the third parties be disclosed to the court and also be added to the Lawsuit under Joiner {sic} Rules ." (Doc. 152). The Court denied the Motion for Discovery as untimely and further construed the Motion as containing a Motion to Amend the Complaint and denied that as well. (Doc. 168). Plaintiff has failed to adduce any evidence which demonstrates that similarly situated individuals were approved for loan modifications. Indeed, Plaintiff's blanket allegations and his untimely discovery request are insufficient to raise a racial discrimination claim. Therefore, the Court concludes that because Plaintiff fails to meet his prima facie burden, summary judgment is due to be granted on Plaintiffs' claims for discrimination under Sections 1981 and 1982.

### C. The Fair Housing Act Claim (Counts 4, 5 and 6)

Plaintiff alleges Defendants violated the Fair Housing Act, 42 U.S.C. § 3605, during the

process of originating the loan and during the process of his repeated attempts to have the loan modified due to the death of this wife.  The Court previously concluded that these claims "with respect to any modification proceedings occurring after March 3, 2013" survived Defendants' Motions to Dismiss.  Thus, the Court dismissed the Fair Housing Act claim which Plaintiff brought with respect to the loan origination proceedings and any loan modification proceedings occurring before March 3, 2013. (Docs. 108, 113).

Plaintiff alleges that Defendants violated the Fair Housing Act by engaging in "race-based predatory pricing and servicing of home equity loans.[10]" (Doc. 89 at ¶ 105).   The Eleventh Circuit has defined this type of FHA claim as "reverse redlining" which is "'the practice of extending credit on unfair terms' because of the plaintiff's race and geographic area."  *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 368 (11th Cir. 2009) (quoting *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 20 (D.D.C. 2000)).  In order to succeed on this claim, Plaintiff must show that specific loan terms offered by Defendants were "unfair and predatory, *and* that the defendants either intentionally targeted on the basis of race, or that there is a disparate impact on the basis of race." *Id.* (Emphasis in original).

To the extent Plaintiff brings this FHA claim for discrimination in the origination process, that claim fails because the Court has previously concluded the origination proceedings fell outside of the statute of limitations and was dismissed.   With respect to the FHA claim for discrimination in the modification process, the Court concludes that claim fails for the reasons more specifically

---

[10] At the outset, the Court notes that Plaintiff is factually incorrect; the loan at issue in this action is not a "home equity loan."   (Defendants' Brief in Support of MSJ, Doc. 183, Exs. 2-A and 2-B.)

stated above in Section D. 2 pertaining to Plaintiff's Section 1981 and 1982 claims. Indeed, the undisputed evidence demonstrates that because of previous foreclosure proceedings, Plaintiff could not qualify for the loan at issue and so his wife individually borrowed the money pursuant to two promissory notes. Further, the undisputed evidence demonstrates that Plaintiff did not qualify for a modification because he was not on the loan. *See Molina v. Aurora Loan Servs., LLC.,* 635 F. App.'x 618, 626 (11th Cir. 2015) (FHA claim dismissed where Plaintiff was not otherwise qualified for a loan modification.) Moreover, Plaintiff has failed to show that others, outside the protected class, received preferential treatment in the loan modification process. *Id*. at 625. Additionally, Plaintiff fails to present any evidence that the loan terms were "unfair and predatory" or that he was "intentionally targeted" because of his or that there was "a disparate impact" on the basis of his race. *Steed,* 308 F. App'x at 368. Thus, the Court concludes that summary judgment is due to be granted on Plaintiff's FHA claim.

## VI. Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Defendants' Motions for Summary Judgment (Docs. 175 and 182) be GRANTED in full that Plaintiff's Motion for Summary Judgment (Doc. 186) be DENIED and that all other pending motions be DENIED as Moot.

It is further ORDERED that the Plaintiff file any objections to this Recommendation on or before **February 26, 2018.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 12th day of February, 2018.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE